**ORIGINAL**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

INTERNATIONAL HEALTHCARE
EXCHANGE, INC., d/b/a GLOBAL
HEALTHCARE EXCHANGE and KRISTIN
M. CUENE,

             Plaintiffs,

-v-

GLOBAL HEALTHCARE EXCHANGE, LLC,
ABBOTT LABORATORIES, BAXTER
INTERNATIONAL, INC., GENERAL ELECTRIC
COMPANY, JOHNSON & JOHNSON,
MEDTRONIC, INC., GENE DORFF, JOHN F.
GAITHER, JR., and PATRICK EGAN,

             Defendants.

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #: _____
> DATE FILED: 2/11/07

No. 02 Civ. 7862 (LTS)

## OPINION AND ORDER REGARDING EMPLOYMENT CLAIMS

APPEARANCES:

BERANBAUM MENKEN BEN-ASHER
& BIERMAN LLP
  By: John A. Beranbaum, Esq.
  80 Pine Street
  32nd Floor
  New York, New York 10005

*Attorney for Plaintiff*

SIDLEY AUSTIN BROWN & WOOD LLP
  By: Laura H. Allen, Esq.
  787 Seventh Avenue
  New York, New York 10019
     – and –
  By: Richard O'Brien, Esq.
  Julie O'Donnell Allen, Esq.
  Debra J. Stanek, Esq.
  10 S. Dearborn Street
  Chicago, Illinois 60603

*Attorneys for Defendants Global Healthcare*
*Exchange, LLC, Baxter International, Inc.,*
*General Electric Company, Medtronic, Inc.,*
*Gene Dorff, John F. Gaither, Jr., and Patrick*
*Egan*

LAURA TAYLOR SWAIN, United States District Judge

Copies mailed provided to counsel
Chambers of Judge Swain  1. 11. 07

Plaintiff Kristin Cuene ("Plaintiff" or "Cuene") brings this gender discrimination action against: her former employer, Global Healthcare Exchange, LLC ("GHX"); her supervisor at GHX, Gene Dorff ("Dorff"); GHX's Acting General Counsel, John Gaither, Jr. ("Gaither"); GHX's Vice President, Human Resources, Patrick Egan ("Egan"); as well as GHX's founding companies, Abbott Laboratories, Baxter International, Inc., General Electric Co., Johnson & Johnson ("J&J"), and Medtronic Inc.[1,2]  In her First Amended Complaint, Cuene asserts claims against the corporate defendants for violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.§§ 2000e, et seq. (West 2006).  Defendants assert, and Plaintiff does not contest, that Plaintiff has stipulated that her Title VII claims and the allegations in paragraphs 70 through 75 of her amended complaint concern only GHX.  (Def. Mem. in Supp. of Mot. for Summ. J. at 1, nn.1,2.)

Plaintiff also brings claims against GHX, Dorff, Gaither, and Egan for violations of the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296, et seq. (McKinney 2006), and the New York City Human Rights Law ("NYCHRL"), Admin. Code City N.Y. §§ 8-101, et seq. (West 2006) (collectively "state and local human rights laws").  Cuene brings further claims against Dorff and Gaither for aider and abettor liability under the state and local human rights laws.[3]  The Title VII and state and local human rights law claims are all based

---

[1]     This action also encompasses claims of trademark infringement by co-plaintiff, International Healthcare Exchange, Inc., d/b/a Global Healthcare Exchange, Cuene's own registered company.  A companion Opinion and Order, also issued today, addresses the trademark claims.

[2]     The defendants' listed positions at GHX refer to jobs they held at the time of the events leading to this action.

[3]     Plaintiff has withdrawn her claim against Egan for aider and abettor liability.  (Pl. Mem. in Opp'n to Summ. J. at 23).

on allegations of discrimination on the basis of sex in the terms and conditions of Cuene's employment, culminating in her dismissal, as well as retaliation for opposing unlawful gender-stereotyping employment practices.

This Court exercises jurisdiction of the Title VII claims under 28 U.S.C. §§ 1331, 1343 and 42 U.S.C. § 2000e-5(f)(3), and supplemental jurisdiction of the state and local law claims under 28 U.S.C. § 1367.

In this lawsuit Plaintiff, who was employed by GHX for approximately three months during the year 2000, claims that her job responsibilities were neither commensurate with her expectations and experience, nor consistent with those of similarly situated men who were involved in GHX's work. She attributes the perceived disparities, and her ultimate termination, to sex discrimination in the form of gender stereotyping. Plaintiff also alleges that she was fired in retaliation for complaining about the disparate treatment.

GHX, Dorff, Egan, and Gaither ("Defendants") move for summary judgment on the discrimination and retaliation claims, pursuant to Rule 56 of the Federal Rules of Civil Procedure. Defendants argue principally that: (1) Plaintiff failed to make the prerequisite timely filing with the Equal Employment Opportunity Commission ("EEOC") for the Title VII claims; (2) Plaintiff has not provided sufficient evidence of discrimination on the basis of gender; (3) Plaintiff has failed to make the necessary showing for retaliatory termination; (4) the Court lacks personal jurisdiction over Dorff, Egan, and Gaither (the "Individual Defendants"); (5) GHX is not liable for claims under the state and local human rights laws; (6) Defendants' conduct does not fall within the territorial scope of the state and local human rights laws; and (7) the Individual Defendants are not subject to aider and abettor liability. Defendants also move to strike an expert

report and testimony by Plaintiff's expert witness pursuant to Rules 702 and 403 of the Federal Rules of Evidence.

The Court has carefully considered the parties' written submissions and has reviewed the arguments of both parties. For the reasons set forth below, the Court grants in part and denies in part Defendants' motion for summary judgment, and denies Defendants' motion to strike. Specifically, the Court grants Defendants' summary judgment motion with respect to all claims against Egan and as to Plaintiff's claims of retaliation under both Title VII and the state and local human rights laws.

## BACKGROUND

Except as noted, the following facts are undisputed. In accordance with the standard for summary judgment, the Court will "view evidence in a light most favorable to the non-moving party and draw all reasonable inferences in [her] favor." See American Cas. Co. of Reading, Pa. v. Nordic Leasing, Inc., 42 F.3d 725, 728 (2d Cir. 1994) (citation omitted).

In March 2000, five healthcare product suppliers formed the venture that would ultimately become GHX, to provide an internet-based trading exchange for medical products and services. (Def. 56.1 Statement of Undisputed Facts ("Def. 56.1 Statement") ¶ 1.)[4] In June 2000, GHX hired Cuene as Director, International Business, at a salary of $125,000 plus signing bonus and other incentives, based on her international and start-up experience, market knowledge, and legal skills. (Id. ¶¶ 5, 7; Pl. Response to Def. 56.1 Statement and Counter-Statement of Disputed

---

[4]     Citations to the parties' respective Local Rule 56.1 statements incorporate by reference citations to the underlying evidentiary submissions.

Facts ("Pl. 56.1 Response") ¶¶ 80, 81.)  Cuene was GHX's first direct hire.  (Def. 56.1 Statement
¶ 10.)

       During the time in question, GHX had limited staffing, consisting of "seconded
employees" loaned to GHX by its founding companies, others seconded on a project basis, and a
few new hires.  (Def. 56.1 Statement ¶ 9.)  The amount of administrative support personnel
available to GHX at this time is disputed.  Defendants claim that there was but one (temporary)
administrative assistant directly employed by GHX.  (Id.; see also Egan Aff. Def. Ex. A at 2.)
Plaintiff characterizes five others as also having administrative support positions relating to
GHX's work during the period in question.

       Cuene reported to Dorff, who had no one else directly reporting to him during
Cuene's tenure with GHX.  (Def. 56.1 Statement ¶ 5.)  At this time GHX was based in Chicago,
but its staff was dispersed throughout the country.  (Id. ¶ 11.)  When not traveling for GHX,
Cuene worked out of her New York City home office.  (Pl. 56.1 Response ¶ 73.)  Among the
tasks Dorff assigned to Cuene were working on a market research plan, supporting the efforts of
GHX's European Steering Committee ("ESC"), contributing to the development of a business
plan, and researching the acquisition of living and office space in London.  (Def. 56.1 Statement
¶¶ 14, 15, 19, 20, 23-28.)  Cuene was also asked to perform many mundane tasks, such as
preparing informational grids, updating mailing lists and preparing invitations, arranging
meetings and conference calls, taking notes at ESC meetings, and typing up minutes.  (Pl. 56.1
Response ¶ 102.)  Cuene reached out to Gaither on a number of occasions to suggest ways in
which she might make a more substantial contribution to GHX.  (Id. ¶ 100.)

In August 2000, Cuene began to voice her frustration about the amount of administrative work she was asked to do. (Def. 56.1 Statement ¶ 40.) On September 8, 2000, she emailed Dorff and Egan to complain about the extent of secretarial work she was doing. (Id. ¶ 41.) Cuene emailed Dorff again on September 12, 2000, to which he responded by suggesting they meet to define a "clear role" for Cuene at GHX that would satisfy everyone, or, if she remained unsatisfied, that they could discuss a separation arrangement with Egan. (Id. ¶ 47; GHX Ex. 1029.) Two days later, Cuene emailed Egan again and expressed her ongoing frustration regarding her job responsibilities and mentioned other complaints. (Def. 56.1 Statement ¶51; GHX Ex. 1028.) The latter concerned aspects of her position about which she had previously expressed dissatisfaction, including compensation issues, GHX's impending relocation to Colorado, a decision to focus GHX's international efforts primarily in Europe, and an intention to relocate Cuene to Europe for a period of six months to a year. (GHX Ex. 1028; see Def. 56.1 Statement ¶¶ 56-58.) In response, Egan left Cuene a message stating that he had attempted to reply to her earlier and that she should call him to schedule a time to talk. (Pl. 56.1 Response ¶ 51.) None of Cuene's complaints mentioned gender discrimination as a possible motivation or cause for any of the matters as to which Cuene was dissatisfied. (Id. ¶ 52.)

Dorff and Cuene next met on September 19, 2000, during a Paris business trip. (Id. ¶¶ 62. 63.) The details of their brief conversation are disputed. Cuene believes that Dorff fired her at that time. (Id. ¶ 63.) Dorff denies he fired Cuene. (Pl. 56.1 Response ¶ 120.) Defendants admit for purposes of the instant motion practice, however, that Cuene went away from the meeting believing that she had been fired. That same day, Cuene informed Egan and Gaither that Dorff fired her, and Gaither promptly took over the matter in his capacity as General

Counsel. (Def. 56.1 Statement ¶ 65[1].[5]) GHX subsequently made a decision not to reinstate

Cuene. (Id. ¶ 65[2].) GHX attributes this decision to Gaither's conclusions that Cuene was not a

good fit because of her complaints about administrative tasks that were considered necessary for

all to address in the start-up environment and her dissatisfaction with the company's decisions to

move its headquarters to Colorado rather than maintain them in Chicago, to focus its initial

business expansion on Europe, and to transfer both Plaintiff and her supervisor, Dorff, to Europe

in aid of that work. Gaither also perceived that Plaintiff had in fact been given substantive work.

          In December 2000, Cuene called the EEOC about her termination. (Id. ¶ 69.)

Cuene asserts that she faxed a completed EEOC questionnaire, captioned "Discharge, Job

Elimination, or Layoff," to the EEOC on or about February 17, 2001. (Id. ¶ 70.) She also claims

to have submitted a "Charge of Discrimination" form at some point shortly thereafter. (Pl. Mem.

in Opp'n to Summ. J. 19; Cuene Dep. 479-80, 486.) The EEOC informed Cuene that it had no

record of her filing a charge prior to the one dated September 2, 2001. (Id. ¶ 71.)

## DISCUSSION

### Standard of Review

          Summary judgment shall be granted when the pleadings, depositions, answers to

interrogatories, admissions on file, and affidavits "show that there is no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ.

P. 56(c). In opposing the motion, the nonmoving party may not rest on mere allegations of

contested facts, but must "set forth specific facts showing that there is a genuine issue." Fed. R.

---

[5]     There are two paragraphs numbered 65 in the Rule 56.1 statements; they are referred to
herein respectively as 65[1] and 65[2].

Civ. P. 56(e). The facts will be viewed in the light most favorable to the party opposing the motion, and all reasonable inferences shall be drawn on the nonmovant's behalf. American Cas. Co., 42 F.3d at 728. However, "[c]onclusory allegations, conjecture and speculation" do not establish a genuine issue of fact. Kerzer v. Kingly Mfg, 156 F.3d 396, 400 (2d Cir. 1998). Summary judgment is not appropriate if there exist disputes about material facts "such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see Rattner v. Netburn, 930 F.2d 204, 209 (2d Cir. 1991).

Timeliness of EEOC Charge

In Title VII cases where aggrieved parties institute proceedings with a local agency, a charge of employment discrimination must be filed within 300 days of the last alleged unlawful practice. 42 U.S.C. § 2000e-5(e)(1); Quinn v. Green Tree Credit Corp., 159 F.3d 759, 765 (2d Cir. 1998). EEOC regulations provide that a filing with the EEOC constitutes a charge if it is in written form, identifies the parties and generally describes the alleged discriminatory acts. 29 C.F.R.§ 1601.12(b). A later verified charge may relate back to an otherwise timely filing that includes those elements but lacks more formal attributes. Id. In this regard, an intake questionnaire signed under oath may constitute a timely filing to which a verified charge can relate back. Thompson v. Federal Reserve Bank of New York, 242 F. Supp. 2d 368, 370-71 (S.D.N.Y. 2003); see also 29 C.F.R. § 1601.12. In addition to the regulatory requirements, the initial filing must manifest the complainant's intention that the EEOC initiate its investigation and conciliation functions. See Holowecki v. Federal Exp. Corp., 440 F.3d 558, 566-67 (2d Cir. 2006) (citing Wilkerson v. Grinnell Corp., 270 F.3d 1314, 1319 (11th Cir. 2001); Steffen v.

Meridian Life Ins. Co., 859 F.2d 534, 542 (7th Cir. 1988); Bihler v. Singer Co., 710 F.2d 96, 99 (3d Cir. 1983)).

Here, Cuene alleges that she timely faxed a "Discharge, Job Elimination, or Layoff" questionnaire, identifying her allegations and the parties involved to the EEOC, in February 2001. (Pl. Ex. 4.) She further asserts that she returned a "Charge of Discrimination" form shortly thereafter. The EEOC has no record of receipt of either the questionnaire or the form, and Plaintiff proffers no documentary evidence that she sent them. The only verified charge presented to the Court is dated September 2, 2001, some 48 days beyond the 300-day deadline. (Defs. Ex. 65.)

Because the form that Cuene claims to have sent to the EEOC appears to include the basic information called for by the regulation, her allegation that she faxed the form in a timely manner raises a genuine issue of material fact that cannot be resolved upon this motion for summary judgment. Defendant's motion for dismissal of Plaintiff's Title VII claims as untimely is therefore denied.

## Motion to Strike Expert Testimony

In her opposition to Defendants' summary judgment motion, Plaintiff proffers a report from an expert on gender stereotyping in which the author, Dr. Borgida, details theories and the state of research concerning gender stereotyping, and opines based on Plaintiff's perceptions and certain other aspects of the record in this case that Plaintiff's work assignments and termination were the product of such stereotyping. Defendants object to consideration of the Borgida report in connection with the instant motion practice, arguing that expert discovery was

bifurcated from fact discovery, such that Defendants have not had a chance to cross-examine

Borgida or to secure their own testimony on this ground, that the Borgida report is unreliable

because it does not analyze all of the evidence presented in connection with the motion, that it

would not be helpful to the fact finder in this case because the notion of gender stereotyping is

not an arcane one and that, even if the report is otherwise admissible, it should be stricken

pursuant to Federal Rule of Evidence 403 on the grounds that its probative value is outweighed

by the risk of unfair prejudice.

The hallmarks of admissibility of expert testimony are reliability and relevance.

Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 597 (1993). See Fed. R. Evid. 702.

Ordinarily, questions of credibility should not keep expert testimony from being admitted. See

Daubert, 509 U.S. at 596; Hemmings v. Tidyman's, Inc., 285 F.3d 1174, 1188 (9th Cir. 2002).

Defendants' principal substantive argument with respect to Borgida's report is

that his conclusions are fundamentally unreliable because he did not review pertinent record

evidence and he neglected to consider alternative explanations for Defendants' actions. They

cast doubt on his application of general principles identified in the gender stereotyping literature

to the facts of this case.

These are issues that do not so undermine the reliability of Borgida's report as to

warrant its rejection pursuant to Rule 702, nor do they raise such issues of unfair prejudice as to

outweigh the probative value of the Borgida report. Defendants' arguments as to the weight and

propriety of Borgida's conclusions can be raised at trial. The motion to strike Borgida's report is,

accordingly, denied.

Disparate Treatment and Retaliation Claims

Discrimination claims under Title VII and the state and local human rights laws implicate the so-called McDonnell Douglass burden-shifting framework. Leopold v. Baccarat, Inc., 174 F.3d 261, 264 n.1 (2d Cir. 1999); Clark v. New York State Elec. & Gas Corp., 67 F. Supp. 2d 63, 71 n.5 (N.D.N.Y. 1999). See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under this method, a plaintiff makes a prima facie case by showing that the plaintiff is a member of a protected class, was qualified for the position held, and suffered an adverse employment action, and that the circumstances surrounding that action give rise to an inference of discrimination. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993). If these requirements are met, a defendant may rebut a presumption of discrimination by providing a nondiscriminatory reason for the conduct underlying the allegations. A plaintiff may show the nondiscriminatory reason is but a pretext; however, there is no need to disprove the proffered explanation unless it "forecloses any issue of material fact." Carlton v. Mystic Transp., Inc., 202 F.3d 129, 135 (2d Cir. 2000). Rather, a plaintiff may rely on the same facts underlying the prima facie case to defeat summary judgment so long as a preponderance of the evidence could allow a reasonable fact finder to find that a violation has occurred. Holtz v. Rockefeller & Co., 258 F.3d 62, 78 (2d Cir. 2001); see Carlton, 202 F.3d at 135.

Plaintiff's proffered evidence, when viewed in the light most favorable to her, is sufficient to frame a prima facie case of discrimination. Here, there is no dispute that Cuene was qualified for her position. She alleges that she suffered an adverse employment action in that, although she did receive substantive work assignments, many of the tasks assigned to her were

inappropriately administrative or secretarial, and similarly situated male workers' assignments were not so dominated by such work. Plaintiff identifies three men (Jan Willem de Cler, Tom Jordan, and Brent Ness) as ones who were similarly situated but were not saddled with as much administrative work, were not assigned an equitable share of these tasks, or were not asked to do support work for others as she was. (Pl. Mem. in Opp'n to Summ. J. 12-13.) Cuene also claims that other females at GHX were subject to a disproportionate amount of administrative work. (Id. at 13-14.) Cuene further asserts that the requisite inference of discrimination is supplied by an inference of gender stereotyping, a theory that is addressed in the Borgida report. (Pl. Ex. 5, Borgida Report, at 17-21.)

GHX seeks to rebut Plaintiff's prima facie case by tendering evidence denying that gender bias played any role in GHX's treatment of Cuene. Defendants' evidence asserts that complaints were widespread regarding the start-up's paucity of administrative staff support, and the consequent significant administrative workload components of more senior people (male and female). Defendants further assert that certain of the tasks assigned to Cuene would not have been appropriate for a person working in a secretarial capacity and that, as between Cuene and the supervisor to whom she reported, the supervisor was entitled to assign work. Defendants proffer evidence that Cuene's articulated dissatisfaction with her work and salary level, with a change in the company's business plan to focus its initial efforts on Europe and concomitant changes in the scope of the work assigned to Dorff and Cuene, and with the company's decision to relocate its headquarters to Colorado constituted "disconnects" that made Cuene's continued employment with the company inappropriate. Defendants deny that DeCler, Jordan, and Ness were situated similarly to Cuene and/or that they were spared the administrative work of which

she complains. These nondiscriminatory explanations shift the burden to Cuene to set forth facts that, taken in the most favorable light, could reasonably lead to a verdict against the Defendants.

Plaintiff's evidence raises genuine issues of fact regarding whether there was disparate treatment and, if there was, the reasons for such treatment. A reasonable fact finder, construing the facts in the light most favorable to Plaintiff, could conclude that she was the victim of gender discrimination. Thus, Defendants' motion for summary judgment dismissing Cuene's Title VII and state and local law disparate treatment claims for failure to state a claim is denied.

## Retaliation Claims

Cuene alleges that Defendants retaliated against her by terminating her employment for complaining about having to perform unwarranted amounts of secretarial-type work. To sustain these claims under Title VII and the state and local laws, Cuene must show that she engaged in a protected activity that caused Defendants to instigate an adverse employment action. 42 U.S.C. § 2000e-3(a); N.Y. Exec. Law § 296(7) (McKinney 2006); Admin. Code City N.Y. §§ 8-101(7); see Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 713 (2d Cir. 1996).[6] "Protected activity" refers to any action taken to protest or oppose discrimination prohibited by the statute. 42 U.S.C. § 2000e-3; Cruz, 202 F.3d at 566. An employer retaliates when it attempts to stifle allegations of illegality or punish those making accusations. It follows that an employer must have notice that a plaintiff opposed conduct prohibited by the statute. Galdieri-Ambrosini v. Nat'l Realty and Dev't Corp., 136 F.3d 276, 292 (2d Cir. 1998).

---

[6]     Courts apply the same analysis to retaliation claims under both Title VII and the local law provisions. Cruz v. Coach Stores, Inc., 202 F.3d 560, 565 n.1 (2d Cir. 2000).

Plaintiff has failed to provide evidence that could lead a jury to reasonably conclude that she engaged in protected activity. The evidence shows, and Cuene admits, that she never explicitly raised the issue of gender discrimination when she complained about her work. Plaintiff asserts, nevertheless, that complaints from a female high-level manager about having to perform secretarial work clearly implied that she was being subject to sex discrimination. Cuene also argues that Dorff's alleged comment that "being the world's highest paid secretary is nothing to be proud of" indicates that her complaints were perceived as having a basis in gender discrimination.

Complaints about conduct clearly prohibited by the statute need not mention discrimination or use particular language. See Ramos v. City of New York, No. 96 Civ. 3787(DLC), 1997 WL 410493, at *3 (S.D.N.Y. July 22, 1997) (no "magic words" must be used). However, ambiguous complaints that do not make the employer aware of alleged discriminatory misconduct do not constitute protected activity. Id. ("[T]he complaint must put the employer on notice that . . . discrimination is occurring."); see Sales v. YM & YMHA of Washington Heights and Inwood, Nos. 00 Civ. 8641(RLC) and 01 Civ. 1796(RLC), 2003 WL 164276, at*8 (S.D.N.Y. Jan. 22, 2003) (finding complaints to an employer unaware of the racial undertones of term used by employee's supervisor were not protected activity). The content of Cuene's complaints and Dorff's comment, even when construed in the light most favorable to Plaintiff, do not raise a genuine issue of fact as to whether Defendants were put on notice that Cuene felt she was being discriminated against on the basis of sex. Defendants are, accordingly, entitled to summary judgment dismissing Cuene's retaliation claims under Title VII, NYSHRL, and NYCHRL.

Supplemental Jurisdiction

Because Plaintiff's Title VII disparate treatment claims have survived this motion

practice, the Court will retain supplemental jurisdiction of her state and local law disparate

treatment claims, pursuant to 28 U.S.C. § 1367, to avoid the potential for duplicative litigation

over the same conduct.

Because the Court will retain supplemental jurisdiction of the state and local law

discrimination claims, the Court will address the Individual Defendants' contentions that there is

no basis for the exercise of personal jurisdiction over them in connection with those claims, and

certain legal issues peculiar to the state and local law claims.


Personal Jurisdiction

The Individual Defendants move to dismiss all of the claims against them for lack

of personal jurisdiction.  In federal question cases, federal courts apply forum state law as to

personal jurisdiction over non-domiciliaries.  Omni Capital Int'l v. Rudolf Wolff & Co., 484

U.S. 97, 104-05 (1987); Mareno v. Rowe, 910 F.2d 1043, 1046 (2d Cir. 1990).  The plaintiff

bears the burden of establishing personal jurisdiction over the defendants.  Pilates, Inc. v. Pilates

Inst., Inc., 891 F. Supp. 175, 178 n.1 (S.D.N.Y. 1995).  Cuene asserts that this Court's exercise of

jurisdiction over the Individual Defendants is appropriate under New York State's long-arm

statute C.P.L.R. § 302(a), specifically under clauses (1) and (3)(ii) of that provision.  Section

302(a) reads in relevant part:

> a court may exercise personal jurisdiction over any non-domiciliary, or his
> executor or administrator, who in person or through an agent: (1) transacts any
> business within the state or contracts anywhere to supply goods or services in the
> state; . . . or (3) commits a tortious act without the state causing injury to person or

> property within the state . . . if he . . . (ii) expects or should reasonably expect the
> act to have consequences in the state and derives substantial revenue from
> interstate or international commerce . . . .

Under Section 302(a)(1), a defendant must "transact business within the state."

Business transactions must entail purposeful activity in the state that bears a substantial nexus

with the claim. Agency Rent A Car System, Inc. v. Grand Rent A Car Corp., 98 F.3d 25, 31 (2d

Cir. 1996); see McGowan v. Smith, 52 N.Y. 2d 268, 272 (1981); Longines-Wittnauer Watch Co.

v. Barnes & Reinecke, 15 N.Y. 2d 443, 456-57 (1965). Such transactions may consist of

telephone calls or other communications directed into the state. Parke-Bernet Galleries, Inc. v.

Franklyn, 26 N.Y. 2d 13, 17 (1970). See also Kreutter v. McFadden Oil Corp., 71 N.Y. 2d 460,

467 (1988) (jurisdiction may be invoked under section 302(a)(1) "even though the defendant

never enters New York"). But see Whitaker v. Fresno Telsat, Inc., 87 F. Supp. 2d 227, 230

(S.D.N.Y. 1999) ("Jurisdiction can rarely be based solely on defendant's telephone calls into

New York.")

Even a single, purposeful transaction may suffice to impose jurisdiction if that

transaction exhibits a substantial nexus to the cause of action. PDK Labs, Inc. V. Friedlander,

103 F.3d 1105, 1109 (2d Cir. 1997) (citations omitted); Longines-Wittnauer, 15 N.Y. 2d at 456.

Ultimately, courts must examine the totality of the circumstances to determine whether activities

within the state are sufficient to support personal jurisdiction. Hoffritz for Cutlery, Inc. v.

Amajac, Ltd., 763 F.2d 55, 61 (2d Cir. 1985) (citations omitted); Pilates, 891 F. Supp. at 179

(citations omitted).

While she was employed by GHX, Plaintiff worked from her home in New York

City; Gaither and Dorff communicated with her there in connection with that employment. In

particular, work assignments that Plaintiff claims constituted instances of illegal disparate treatment were communicated and assigned to Plaintiff by these individuals via telephone, email, and fax to her home office in New York. Discussions concerning her complaints about her work assignments took place through the same channels. (Pl. Mem. in Opp'n to Summ. J. at 23.) This conduct is sufficient to demonstrate purposeful transaction of business that has a substantial nexus to Plaintiff's employment discrimination cause of action, within the meaning of section 302(a)(1) of New York's C.P.L.R. See Launer v. Buena Vista Winery, Inc., 916 F. Supp. 204, 210 (E.D.N.Y. 1996) (considering California-based employer's communications with its employee in New York and decision made in California not to rehire plaintiff as evidence of transacting business). Unlike Launer, where only a few of the company's New York contacts were directly related to the plaintiff's discrimination action, a substantial portion of Dorff and Gaither's communications to Cuene form the substantive basis for her claims against them. Dorff and Gaither thus engaged in business transactions that are sufficient to establish a basis for the Court's exercise of personal jurisdiction under New York's long-arm statute.[7]

Defendants' argument that personal jurisdiction cannot be exercised over individuals for acts performed in a representative capacity is unavailing. The "fiduciary shield" doctrine is not applied in New York. Kreutter, 71 N.Y. 2d at 472. The Court notes in this connection that the state and local human rights laws, on which Plaintiff relies, provide for

---

[7]     Cases in which courts have refused to exercise long-arm jurisdiction based solely on Defendants' telecommunications generally involve isolated contacts, e.g., Whitaker, 87 F. Supp. at 230; or contacts unrelated to plaintiffs' claims, e.g., Hutton v. Piepgras, 451 F. Supp. 205, 208 (S.D.N.Y. 1978), or fall into an exception for nonessential contract negotiations, e.g., Worldwide Futgol Assocs., Inc. v. Event Entm't, Inc., 983 F. Supp. 173, 177 (E.D.N.Y. 1997). Here, Dorff and Gaither's alleged acts were connected to Cuene's ongoing employment and underlie the discrimination claim.

individual liability in discrimination cases where the individuals had power over personnel decisions regarding the plaintiff. Tomka v. Seiler Corp., 66 F.3d 1295, 1317 (2d Cir. 1995), abrogated on other grounds by Burlington Indus., Inc. v. Ellerth, 524 U.S. 742 (1998) (citing Patrowich v. Chemical Bank, 63 N.Y. 2d 541, 543-44 (1984)). This situation is akin to the established exception to the fiduciary shield doctrine for corporate employees who commit a tort in the forum state. See Kreutter, 71 N.Y. 2d at 472. Considering all the facts of this case, the Court finds that Dorff and Gaither are subject to personal jurisdiction under N.Y. C.P.L.R. § 302(a)(1).

The Court must, however, also determine whether this assertion of jurisdiction would offend accepted constitutional notions of due process. This determination rests upon the adequacy of the defendant's contacts with the forum state and the reasonableness and fairness of the court's exercise of power over the defendant. Metropolitan Life Ins. Co. v. Roberson-Ceco Corp., 84 F.3d 560, 567 (2d Cir. 1996); International Shoe Co. v. Washington, 326 U.S. 310, (1945). As discussed, the alleged misconduct comprised transactions that were purposefully directed toward New York, indicating a preliminary finding of specific jurisdiction. A defendant who deliberately engages in significant activities with or creates continuing obligations to residents of the forum state may be considered to have fair warning that claims arising from such activity could subject them to jurisdiction in that forum. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985). This is the case for Dorff and Gaither, whose ongoing business activities with Cuene in New York constitute a significant portion of the activity supporting her claim. Dorff and Gaither do not escape the Court's exercise of jurisdiction under the due process analysis because they were acting solely in their occupational capacity. See Calder v. Jones, 465

U.S. 783, 790 (1984). Like the defendant in Calder, Dorff and Gaither were "primary participants" in activity whose effects would be felt by the Plaintiff in the forum state. See id. Because it is reasonably foreseeable that misconduct in the exercise of their supervisory authority over an employee might expose them to liability in the state of employment, the Court's exercise of jurisdiction over Dorff and Gaither is appropriate.

Courts analyze five factors to assess the overall fairness or reasonableness of haling defendants to a distant forum. See Metropolitan Life, 84 F.3d at 568. As applied to the facts of this case, these considerations indicate that the exercise of personal jurisdiction is appropriate. First, the burden inherent in forcing Dorff and Gaither to defend themselves in New York is mitigated by the inevitability of their appearance as witnesses in a trial against GHX. Second, the interest of forum-state adjudication is not insignificant, as New York has a particular interest in protecting its residents under its local human rights laws. Third, the plaintiff's interest in obtaining convenient and effective relief is furthered by maintaining her choice of venue. The fourth and fifth factors—efficient resolution of the controversy and the shared interest of the states in advancing substantive social policies—do not bear strongly on this case.

The Court finds that application of New York's long-arm statute comports with Dorff and Gaither's due process rights. The summary judgment motion with regard to personal jurisdiction is thus denied as to claims against Dorff and Gaither.

Plaintiff has not, however, set forth facts to show sufficient New York contacts for Egan. Cuene does not allege that Egan exercised supervisory authority over her, participated in her termination, or otherwise transacted business within the state related to the alleged discrimination. Furthermore, she has withdrawn her aider and abettor claims against Egan, and

she fails to address him specifically in her discussion of personal jurisdiction.  (Pl. Mem. in Opp'n to Summ. J. at 23-24.)  Consequently, Plaintiff has failed to demonstrate that the exercise of personal jurisdiction over Egan pursuant to N.Y. C.P.L.R. § 302(a)(1) is appropriate. Plaintiff's alternative basis for jurisdiction, under § 302(a)(3)(ii), is also unavailing for Egan because she has not shown that he derived substantial revenue from interstate or international commerce.  Plaintiff's assumption that income derived from an employer's interstate revenue satisfies this requirement is erroneous.  The revenue of a corporation is imputed to individuals for jurisdictional purposes only if they are major shareholders.  Siegel v. Holson Co., 768 F. Supp. 444, 446 (S.D.N.Y. 1991).  No showing of such status on Egan's part has been made. Accordingly, Defendants' motion for summary judgment is granted with respect to all claims against Egan.

Issues Unique to State and Local Claims

Imputed Liability

Defendants assert that, in order to hold GHX liable under NYSHRL, Plaintiff must show that GHX was party to the alleged discrimination.  Generally, Title VII actions and claims arising under the state and local laws are evaluated identically.  Cruz, 202 F.3d at 565 n.1. However, courts have applied a stricter standard under the state and local human rights laws with regard to the imputation of liability to an employer, requiring that the employer encourage, condone, or approve of the conduct.  See, e.g., Heskin v. InSite Adver., Inc., No. 03 Civ.2598 (GBD)(AJP), 2005 WL 407646, at *23 (S.D.N.Y. Feb. 22, 2005); Forrest v. Jewish Guild for the Blind, 3 N.Y. 3d 295, 311 (2004).  This interpretation is rooted in Totem Taxi v. State Human

Rights Appeal Bd., 65 N.Y.2d 300, 305 (1985), and Human Rights ex rel. Greene v. St.

Elizabeth's Hosp., 66 N.Y. 2d 684, 687 (1985), in which the New York Court of Appeals held

that NYSHRL does not impose liability on employers absent a showing that the employer

became a party to the discriminatory conduct. Furthermore, condonation requires actual notice.

St. Elizabeth's Hosp., 66 N.Y. 2d at 687.

   Drawing all reasonable inferences in Plaintiff's favor, it cannot be held as a matter

of law that GHX was not, de facto, a party to the alleged discrimination. Should Cuene succeed

in proving a violation of the human rights laws by either Dorff or Gaither (two of the eleven

members of GHX's management team in the summer of 2000), a fact finder could reasonably

conclude that GHX was party to the misconduct, thereby satisfying the stricter standard. This

conclusion does not conflict with established case law. In Totem Taxi, a taxicab company

appealed the appellate division's decision holding it liable for one of its driver's racial and

threatening comments under NYSHRL. Totem Taxi, 65 N.Y.2d at 303. The president of the

company had an existing anti-discrimination policy and, as soon as he became aware of the

incident, apologized to the victims and suspended the driver. Id. Interpreting the statute to

require an independent basis for employer liability, the court noted, "it cannot be rationally

concluded under the present statute that an employer has been guilty of discrimination whenever

any employee at any level commits . . . a disapproved and unanticipated discriminatory act." Id.

at 305-06 (emphasis added). In St. Elizabeth's Hospital, the court found that the mere fact that

the defendant hospital employed a doctor who allegedly made racist remarks to a patient was not

enough to incur liability (but remanded for an inquiry into whether the hospital's response might

amount to condonation). <u>St. Elizabeth's Hosp.</u>, 66 N.Y. 2d at 687. In both instances, unlike the present case, the conduct giving rise to the claim was remote from the entities' officers.

Defendants cite <u>Heskin</u>, in which the court dismissed the plaintiff's claim seeking to impute a senior vice president's alleged quid pro quo harassment to his employer, <u>Heskin</u>, 2005 WL 407646, at *23, but it, too, is distinguishable. First, the alleged malefactor in that case worked for a separate entity than the plaintiff and lacked direct authority over the terms of her employment. <u>Id.</u> at *1-2. Second, the allegations consisted of an isolated act of sexual harassment and retaliation. <u>Id.</u> at *6-9. As discussed above, Cuene has adduced evidence suggesting she suffered from disparate treatment on the basis of gender over the course of her employment. Further, top managers in the company are implicated by her claims. Taking all inferences in favor of the Plaintiff, a jury could reasonably conclude that GHX tacitly condoned, encouraged, or approved of discriminatory behavior engaged in by individuals at a sufficiently high level of the company so as to confer liability upon GHX under NYSHRL.

Because there remains a genuine issue of fact as to whether GHX was a party to illegal discriminatory conduct, and thus liable under NYSHRL, Defendants' motion for summary judgment is denied with respect to GHX for violations of the state human rights law.


## Territorial Scope of NYSHRL and NYCHRL

Defendants argue that their allegedly discriminatory actions toward Cuene could only fall within section 298-a of NYSHRL, and consequently that Plaintiff's state law claims must be dismissed because that section has no provision for a private right of action. <u>See</u> <u>Sherwood v. Olin Corp.</u>, 772 F. Supp. 1418, 1425 (S.D.N.Y. 1991). Section 298-a amended the

state human rights law to reach acts of discrimination occurring outside the state that are perpetrated against New York residents by out-of-state defendants.  N.Y. Exec. Law § 298-a. However, Cuene brings her state claims under section 296, which covers acts of discrimination that occur within New York State, regardless of the residency status of the parties.  See Casper v. Lew Lieberbaum & Co., No. 97 Civ. 3016 (JGK), 1998 WL 150993, at *4 (S.D.N.Y. March 31, 1998).  An out-of-state employer's discriminatory conduct falls within section 296 if it affects the "terms, conditions, or privileges of employment . . . within New York."  Sherwood, 772 F. Supp. at 1426; see N.Y. Exec. Law § 296(a); Admin. Code City N.Y. § 8-101(a).  The plaintiff's NYSHRL claim in Sherwood was dismissed because the alleged discrimination took place within the borders of Connecticut, where she worked.  Sherwood, 772 F. Supp. at 1420.  Cuene's place of employment was in New York City, however, and the alleged discrimination had its effects there.  See Curto v. Medical World Comm., Inc., 388 F. Supp. 2d 101, 106-07 (E.D.N.Y. 2005) (denying dismissal of plaintiff's NYSHRL claim where discriminatory practices of New Jersey corporation were alleged to have affected plaintiff at her workplace, a home office in New York). Because the allegedly discriminatory acts affected the terms and conditions of her employment at her workplace in New York City, her claims against Dorff and Gaither are within the scope of the NYSHRL.

      Similarly, the New York City Human Rights Law covers only discriminatory conduct occurring within the city limits.  See Admin. Code City N.Y. §§ 2-201, 8-101; Casper, 1998 WL 150993, at *4.  "To determine the location of the discrimination, courts have looked to the location of the impact of the offensive conduct."  Salvatore v. KLM Royal Dutch Airlines, No. 98 Civ. 2450 (LAP),  1999 WL 796172, at *16 (S.D.N.Y. Sept. 30, 1999).  Thus, it is the site

of impact, not the place of origination, that determines where discriminatory acts occur. See

Lightfoot v. Union Carbide Corp., No. 92 Civ. 6411 (RPP), 1994 WL 184670, at *5 (S.D.N.Y.

May 12, 1994) (dismissing NYCHRL claim because the impact of the allegedly discriminatory

separation agreement was felt at plaintiff's Connecticut office, even if the decision was made in

New York City); Salvatore, 1999 WL 79612, at *17 (finding harassing remarks made at a

company outing in New York City and at the home of an employee in the city were felt at

plaintiff's workplace, in Westchester County, precluding NYCHRL claim).  The instant situation

is the opposite of Lightfoot and Salvatore.  Defendants' alleged discriminatory conduct, though

originating outside of the city, affected Cuene in New York City, and thus may form the basis of

a cause of action under NYCHRL.

   Defendants' motion for summary judgment as to Plaintiff's state and local law

claims on the grounds that they are jurisdictionally deficient is, therefore, denied.


Aider and Abettor Liability

   Defendants raise three issues regarding Plaintiff's claims sounding in the aider

and abettor provisions of the state and local laws.  The relevant statutes provide that, "It shall be

an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing

of any of the acts forbidden under this [provision], or to attempt to do so."  N.Y. Exec. Law §

296(6); Admin. Code City N.Y.  § 8-107(6).  The Second Circuit has held that actual

participation in conduct giving rise to a discrimination claim may support liability under §

296(6).  Tomka, 66 F.3d at 1317.  See also Patane v. Clark, 435 F. Supp. 2d 306, 313 (S.D.N.Y.

2006); Salvatore, 1999 WL 796172, at *8. However, accessory liability may only be found where a primary violation has been established. Patane, 435 F. Supp. at 314 (citations omitted).

Defendants first argue that Cuene has failed to proffer evidence of a primary violation by GHX, and that any aider and abettor claim must thus be dismissed. As explained above, a genuine issue of material fact exists as to whether GHX violated the state and local human rights laws by becoming a party to discriminatory conduct. If Plaintiff can prove a primary violation by GHX, then actions by Dorff or Gaither that aid and abet that violation may subject them to liability. Further, a defendant may incur aider and abettor liability in connection with a primary violation of another employee, not just that of the employer. See McIlwain v. Korbean Int'l Inv. Corp., 896 F. Supp. 1373, 1382-83 (S.D.N.Y. 1995). Thus, a primary violation by either Dorff or Gaither could also provide the basis for an aider and abettor claim.

Defendants also reiterate their jurisdictional argument, asserting that Dorff and Gaither's conduct as to the aider and abettor claims did not take place in New York State or City and thus are outside the scope of the state and local laws. As explained above, however, the site of impact determines where discriminatory conduct occurs for these purposes, and thus Defendants are not entitled to summary judgment on this basis.

Finally, Defendants argue that Plaintiff has failed to allege that Gaither acted with the requisite intent for liability under the aider and abettor provisions. Defendants urge that the "community of purpose" required to impose accessory liability be applied in an overly restrictive way, considering the more flexible approach adopted by a number of courts. For example, supervisors have been deemed to fall within § 296(6) for failing to take remedial measures upon notification of discriminatory conduct by others. See Lewis v. Triborough Bridge and Tunnel

Auth., 77 F. Supp. 2d 376, 380-84 (S.D.N.Y. 1999) (collecting cases). Also, co-workers

contributing to a hostile work environment may face liability under the provision. See, e.g.,

Tomka, 66 F.3d at 1317; McIlwain, 896 F. Supp. at 1383. One court has even suggested that a

sole defendant might sustain liability for aiding and abetting his own conduct. Salvatore, 1999

WL 796172, at *8; see also Lewis v. Triborough Bridge and Tunnel Auth., No. 97 Civ. 0607

(PKL), 2001 WL 46986, *2 (S.D.N.Y. Jan. 18, 2001).

        Defendants rely on Heskin and Brice v. Security Operations Sys., Inc., No. 00 Civ.

2438 (GEL), 2001 WL 185136 (S.D.N.Y. Feb. 26, 2001) for their narrower view of "actual

participation." In Heskin, aider and abettor claims against the client of plaintiff's employer were

dismissed for want of evidence that the client (rather than its employee) intended to harass or

retaliate against plaintiff for rebuffing the employee's advances. The court wrote that a claim

may not be sustained were "plaintiff fails to plead any facts suggesting that a defendant displayed

any intent to discriminate or was in any way involved in the alleged discriminatory scheme."

Heskin, 2005 WL 407646, at *23 (quoting Lewis, 77 F. Supp. 2d at 381) (emphasis added). In

Brice, the court dismissed aiding and abetting claims against co-defendant Viacom, which had

contracted with the plaintiff's employer for security services. Brice, 2001 WL 185136, at *1.

The court found the plaintiff's evidence failed to indicate a connection between Viacom and

either the initial alleged discriminatory conduct or assistance to the security company in

establishing a pretextual reason for plaintiff's termination. Id. at *4-*8. Whereas Brice set forth

insufficient facts substantiating Viacom's participation in discriminatory conduct, Cuene has

proffered evidence that, taken in the most favorable light, could reasonably convince a fact finder

that Gaither actively participated in discriminatory conduct. Cuene asserts that Gaither "actively

participated" in her discriminatory termination, because he "effectively affirmed Dorff's prior discriminatory action" by failing to reinstate her. (Pl. Mem. in Opp'n to Summ. J. at 22.) She adds that Gaither's decision was tainted by discrimination based on gender stereotypes. Id. See Nodelman v. Gruner & Jahr USA Publ'g, No. 98 Civ. 1231 (LMM), 2000 WL 502858, at *12 (S.D.N.Y. Apr. 26, 2000) (denying summary judgment on aider and abettor claims against defendants who participated in allegedly discriminatory termination decision). A fact finder might reasonably conclude that Gaither was "in some way involved" with these instances of discrimination that form the basis of Cuene's allegations of primary violations of the state and local human rights laws. Plaintiff's proffered evidence raises a genuine issue of material fact as to whether Gaither aided and abetted discriminatory conduct.

For the reasons stated above, Defendants' motion for summary judgment with respect to the aider and abettor claims under NYSHRL and NYCHRL is denied.

## CONCLUSION

For the foregoing reasons, Defendants' motion to strike Plaintiff's expert report is denied, and Defendants' motion for summary judgment is granted in part and denied in part. The motion is granted with respect to all claims against Egan and with respect to Plaintiff's retaliation claims under Title VII, NYSHRL, and NYCHRL against all Defendants. Plaintiff's Title VII discrimination claim against GHX survives, as do her NYSHRL and NYCHRL primary liability claims against GHX, Dorff, and Gaither, and her aider and abettor liability claims against

Dorff and Gaither.  The Court will exercise supplemental jurisdiction of Plaintiff's state and local law claims.

SO ORDERED.

Date:   New York, New York
January 11, 2007

_____
LAURA TAYLOR SWAIN
United States District Judge